(No. 86739.—

FIRST SPRINGFIELD BANK & TRUST, as Special Adm'r of the Estate of May F. Phillippart, Deceased, Appellee, v. ANGELA S. GALMAN *et al.* (Howard C. Dobson *et al.*, Appellants).

*Opinion filed October 21, 1999.—Rehearing denied November 29, 1999.*

BILANDIC, J., took no part.
HARRISON, J., dissenting.

Williams & Montgomery Ltd. (Barry L. Kroll, Edward J. Murphy and C. Barry Montgomery, of counsel), and James K. Horstman, of Iwan, Cray, Huber, Horstman & VanAusdal LLC, all of Chicago, for appellants.

Alexandra de Saint Phalle and Thomas F. Londrigan,

of Londrigan, Potter & Randle, P.C., of Springfield, for appellee.

James Paul Costello, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE RATHJE delivered the opinion of the court:

The primary issue in this case is whether defendants' negligence was the proximate cause of May Phillippart's fatal injuries. We hold that it was not.

## BACKGROUND

The relevant facts are not in dispute. Howard C. Dobson drove a tanker truck for ADM Trucking, Inc. (hereinafter, ADM). Around 3 p.m. on Tuesday, November 21, 1989, Dobson parked his truck on the north side of Lawrence Avenue, 41 feet from the intersection of English Street, in Springfield. Although Lawrence Avenue is a four-lane designated truck route on which parking is permitted at certain times of the day, parking is not permitted on the north side of Lawrence Avenue between the hours of 7 a.m. and 6 p.m., Monday through Saturday.

Shortly after Dobson parked his truck, May Phillippart, an 18-year-old foreign exchange student from France, began walking south on English Street. At the intersection of English and Lawrence, Phillippart did not cross Lawrence in the marked crosswalk. Instead, she turned right and headed west on Lawrence, walking 41 feet plus the full length of the truck before deciding to cross. When she reached the front of Dobson's parked truck at mid-block, Phillippart entered Lawrence Avenue, walked to the front driver's side of the truck, and waited for traffic to clear so that she could cross to the south side of the street. After taking 1½ slow steps into the center westbound lane of Lawrence Avenue, Phillippart began running at a 45-degree angle across the street.

At about the center line of Lawrence Avenue, Phillippart was struck by the front passenger's side of a car driven by Angela Galman. Section 80.04 of the City of Springfield Code provides that "[p]edestrian crossings between intersections shall be prohibited in the interest of public safety, except where there may be a marked crosswalk."

Phillippart remained in a near comatose state until July 7, 1991, when she died from her injuries. Following Phillippart's death, the National Health Service of France paid her estate $452,794.82 as compensation for Phillippart's medical expenses.

First Springfield Bank & Trust, acting on behalf of Phillippart's estate, sued Galman, Dobson, and ADM for negligence. In addition, First Springfield sued Dobson and ADM for violating section 5 of the Public Nuisance Act, which makes it a public nuisance "[t]o obstruct or encroach upon public highways." Ill. Rev. Stat. 1989, ch. 100½, par. 26(5) (now 720 ILCS 5/47—5(5) (West 1998)). The jury entered a general verdict, finding that Phillippart's damages totaled $1 million and that Phillippart was 45% at fault. Accordingly, the jury awarded First Springfield $550,000. Pursuant to section 2—1205.1 of the Code of Civil Procedure (735 ILCS 5/2—1205.1 (West 1998)), Dobson and ADM moved to reduce the jury award to reflect the amount paid to Phillippart's estate by the National Health Service of France. Dobson and ADM also moved for judgment notwithstanding the verdict on all counts. The trial court denied the motions.

The appellate court affirmed the trial court's judgment. 299 Ill. App. 3d 751. In dissent, Justice Steigmann concluded that Dobson and ADM are entitled to judgment notwithstanding the verdict because the illegally parked tanker truck was not the proximate cause of Phillippart's injuries. Instead, the truck constituted merely a condition that allowed Phillippart's injuries to occur. 299 Ill. App. 3d at 764 (Steigmann, J., dissenting).

ADM and Dobson now appeal from the appellate court's judgment, arguing that they are entitled to a judgment notwithstanding the verdict on (1) all claims because the illegally parked truck was not the proximate cause of Phillippart's injuries; (2) the negligence claim because they owed no duty of care to Phillippart, who was illegally jaywalking when the accident occurred; and (3) the public nuisance claim because plaintiff failed to establish the existence of either a public nuisance or a private right of action under section 5 of the Public Nuisance Act. In the alternative, ADM and Dobson argue that they are entitled to a reduction in the jury award to reflect the amount paid to Phillippart's estate by the National Health Service of France. First Springfield also appeals, arguing that the jury's award should not have been reduced by 45% because, although comparative negligence is a defense to a negligence claim, it is not a defense to a public nuisance claim.

This court granted leave to appeal, and jurisdiction exists under Supreme Court Rule 315 (177 Ill. 2d R. 315).

## ANALYSIS

To recover damages based upon a defendant's alleged negligence, a plaintiff must allege and prove that the defendant owed a duty to the plaintiff, that defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries. *Thompson v. County of Cook*, 154 Ill. 2d 374, 382 (1993). To recover damages based upon a defendant's alleged statutory violation, a plaintiff must show that (1) she belongs to the class of persons that the statute was designed to protect; (2) her injury is of the type that the statute was designed to prevent; and (3) the violation proximately caused her injury. *Kalata v. Anheuser-Busch Cos.*, 144 Ill. 2d 425, 434-35 (1991).

Dobson and ADM argue that they are entitled to a judgment notwithstanding the verdict on all counts

because the illegally parked tanker truck was not a proximate cause of plaintiff's injuries. Because proximate cause ordinarily is a question for the trier of fact, a judgment notwithstanding the verdict cannot be granted on that basis unless "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967).

In arguing that the illegally parked tanker truck was not a proximate cause of Phillippart's injuries, Dobson and ADM correctly observe that Illinois courts draw a distinction between a condition and a cause. Indeed, if the negligence charged does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury. *Briske v. Village of Burnham*, 379 Ill. 193, 199 (1942); *Merlo v. Public Service Co.*, 381 Ill. 300, 316 (1942); see also *Thompson*, 154 Ill. 2d at 383. The test that should be applied in all proximate cause cases is whether the first wrongdoer reasonably might have anticipated the intervening efficient cause as a natural and probable result of the first party's own negligence. *Merlo*, 381 Ill. at 317. According to Dobson and ADM, the illegally parked tanker truck constituted only a passive condition that provided an opportunity for the active causal agencies (*i.e.*, Galman's negligent driving and Phillippart's negligent decision to jaywalk) to interact.

First Springfield, by contrast, urges us to abandon the "condition vs. cause" dichotomy altogether and instead embrace the proximate cause standard articulated in *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455 (1992). In *Lee*, the court held that the term "proximate cause" describes two distinct requirements: cause in fact

and legal cause. *Lee*, 152 Ill. 2d at 455. Cause in fact exists where there is a reasonable certainty that a defendant's acts caused the injury or damage. *Lee*, 152 Ill. 2d at 455. A defendant's conduct is a cause in fact of the plaintiff's injury only if that conduct is a material element and a substantial factor in bringing about the injury. *Lee*, 152 Ill. 2d at 455. A defendant's conduct is a material element and a substantial factor in bringing about an injury if, absent that conduct, the injury would not have occurred. *Lee*, 152 Ill. 2d at 455. "Legal cause," by contrast, is essentially a question of foreseeability. *Lee*, 152 Ill. 2d at 456. The relevant inquiry here is whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct. *Lee*, 152 Ill. 2d at 456.

According to First Springfield, the illegally parked tanker truck was a cause in fact of Phillippart's fatal injuries because "Angela Galman admitted that the presence of the truck prevented her from going to the right to avoid a collision with May Phillippart at the center line." Moreover, First Springfield contends that the illegally parked tanker truck was the legal cause of Phillippart's fatal injuries because "it was readily foreseeable that at school closing time school children might be crossing the street, and 16-year-old Angela Galman might need both lanes of traffic to avoid an accident."

In raising their respective arguments, the parties appear to be operating under the mistaken assumption that *Briske*, *Merlo*, and *Thompson* are distinct from and wholly incompatible with *Lee*. This is not the case. Although *Briske*, *Merlo*, and *Thompson* clearly employ a vocabulary different from that employed in *Lee*, all of these cases ask the same question: Was the defendant's negligence a material and substantial element in bringing about the injury, and, if so, was the injury of a type that a reasonable person would see as a likely result of

his or her conduct? While *Lee* sets forth this principle in general terms, *Briske, Merlo*, and *Thompson* address a particular subset of cases, namely, those in which the plaintiff's injury results not from the defendant's negligence directly but from the subsequent, independent act of a third person.[1] Thus, when *Briske, Merlo*, and *Thompson* ask whether the defendant's conduct was a cause of the injury or simply furnished a condition by which the injury was made possible, they are in effect asking whether the defendant's conduct was a material and substantial element in bringing about the injury. Similarly, when *Briske, Merlo*, and *Thompson* ask whether the defendant might have reasonably anticipated the intervening efficient cause as a natural and probable result of his or her own negligence, they are in effect asking whether the intervening efficient cause was of a type that a reasonable person would see as a likely result of his or her conduct. Far from conflicting, *Briske, Merlo*, *Thompson*, and *Lee* uniformly embrace the traditional proximate cause test that has governed Illinois for the better part of this century. See, *e.g.*, *Hartnett v. Boston Store of Chicago*, 265 Ill. 331, 334 (1914) (describing relationship between "condition vs. cause" standard and *Lee* standard).

Turning to the facts of this case, we first must decide whether the illegally parked tanker truck was a cause in fact of Phillippart's fatal injuries. We hold that it was, though not for the reason that First Springfield suggests. In arguing cause in fact, First Springfield relies exclu-

---

[1]Admittedly, unlike *Briske* and *Merlo*, *Thompson* does not explicitly mention the independent, intervening act of a third person when setting forth the "condition vs. cause" dichotomy. See *Thompson*, 154 Ill. 2d at 383. Nevertheless, the holding in *Thompson* makes clear that it was the intervening, independent negligence of a third person—namely, Gittings' reckless and drunken driving—that caused the accident. *Thompson*, 154 Ill. 2d at 383.

sively upon Angela Galman's testimony that, had the tanker truck *not* been parked illegally on Lawrence Avenue, she could have swerved to the right to avoid hitting Phillippart. The problem with this argument is that the portion of Galman's testimony upon which First Springfield relies exclusively was admissible only in First Springfield's case against Galman and was specifically *excluded* from evidence in their case against Dobson and ADM. Thus, although Galman's testimony is undeniably relevant to the question of cause in fact, we simply cannot consider it.

Nevertheless, the portions of the record that relate to Dobson and ADM provide a more than sufficient basis for concluding that the tanker truck was a cause in fact of Phillippart's injuries. Again, in deciding whether a defendant's conduct was a material and substantial element in bringing about an injury, we ask whether, absent the defendant's conduct, that injury still would have occurred. *Lee*, 152 Ill. 2d at 455. In this case, had Dobson not parked his truck illegally on Lawrence Street, Phillippart's injuries almost certainly would not have occurred. To be sure, Phillippart still may have chosen to cross Lawrence Avenue at mid-block and in clear violation of the law, but she would have had an unobstructed view of the roadway and presumably would have timed her crossing to avoid a collision with oncoming traffic.

The question thus becomes whether the illegally parked tanker truck was the legal cause of Phillippart's injuries. We hold that it was not. The relevant inquiry here is whether the injury is of a type that a reasonable person would see *as a likely result* of his or her conduct. *Lee*, 152 Ill. 2d at 456. We have no quarrel with First Springfield's assertion that "it was readily foreseeable that at school closing time school children might be crossing the street, and 16-year-old Angela Galman might need both lanes of traffic to avoid an accident." That,

however, is not the question. The question is whether it was reasonably foreseeable that violating a "no parking" sign at mid-block would likely result in a pedestrian's ignoring a marked crosswalk at the corner, walking to mid-block, and attempting to cross a designated truck route blindly and in clear violation of the law. Clearly, it would not. May Phillippart's decision to jaywalk, while undeniably tragic and regrettable, was entirely of her own making. Dobson and ADM neither caused Phillippart to make that decision, nor reasonably could have anticipated that decision as a likely consequence of their conduct. One simply does not follow from the other.

In reaching this decision, we note that the facts of this case differ significantly from those in *Scerba v. City of Chicago*, 284 Ill. App. 3d 435 (1996), a case upon which both the appellate court and First Springfield rely heavily. In *Scerba*, a Chicago Transit Authority (CTA) bus driver stopped his bus in the middle of the block's designated crosswalk, blocking it completely. As a result, a 12-year-old boy walking home from school was forced to cross the street by walking in front of the bus and outside the crosswalk. His view obscured, the boy was struck by an approaching car. The trial court entered summary judgment in favor of the CTA, in part because the bus constituted a condition rather than a cause of the boy's injures. In reversing that judgment, the appellate court properly concluded that a reasonable jury could have found that the boy's decision to walk around the bus and outside the crosswalk was a foreseeable consequence of the bus driver's decision to block the crosswalk. *Scerba*, 284 Ill. App. 3d at 439-41.

We have no quarrel with the decision in *Scerba*, as the CTA driver in that case parked his bus in the one place on the block specifically designated for pedestrian crossing. Of course it was likely that, as a result, pedestrians would be forced to cross the street somewhere

other than in the designated crosswalk. They had no other choice. In this case, by contrast, Dobson parked his tanker truck at mid-block, 41 feet from the nearest crosswalk and in a place that parking was specifically permitted at other times of the day. Nothing in Dobson's conduct increased the likelihood that a pedestrian would forgo an open crosswalk in favor of an obstructed and unlawful mid-block crossing.[2]

## CONCLUSION

We agree with Dobson and ADM that the illegally parked tanker truck was not a proximate cause of May Phillippart's injuries. We therefore reverse the judgment of the appellate court and that portion of the circuit court judgment denying Dobson and ADM's motion for judgment notwithstanding the verdict and we enter judgment in favor of Dobson and ADM on all counts. Because this ruling is dispositive of all claims raised in this appeal, we need not address the remaining issues.

*Judgments reversed.*

JUSTICE BILANDIC took no part in the consideration or decision of this case.

JUSTICE HARRISON, dissenting:

May Phillippart is dead because ADM's driver, Howard Dobson, made the supremely careless decision to leave his tanker truck in a no-parking zone on a busy street by Springfield's most dangerous intersection near 10 schools, including Phillippart's, just as classes were

---

[2]Even if the jury believed the testimony of First Springfield's expert that the tanker truck would have partially obstructed a pedestrian's view of approaching traffic at the English-Lawrence crosswalk, it was in no way a reasonably foreseeable and likely consequence that such pedestrian would instead choose to cross in front of the tanker truck at mid-block, where her view of approaching traffic also was obstructed.

letting out. Dobson had no compelling reason for parking where he did. The location just happened to be near his home, and he wanted to take a shower and make some phone calls.

There was no question as to the illegality of Dobson's actions. He left his truck directly in front of a "No Parking" sign, which he admits that he saw and read. Nor was there any genuine issue as to the danger Dobson created. Expert testimony established that the vehicle presented a major obstruction to traffic and was a hazard to pedestrians who wanted to cross the street. This appraisal was supported by those present on the scene when Phillippart was fatally injured. For the motorists and pedestrians who were forced to maneuver past Dobson's truck, the risks were readily apparent. From the materials before us, it appears that the only one oblivious to the danger was Dobson himself.

My colleagues' decision to defy the jury's verdict and exonerate Dobson and ADM is indefensible. Although it is true that Phillippart was jaywalking at the time she was struck, jaywalking does not strip a pedestrian of the law's protection. Contrary to ADM's contention, every motorist has a duty of care to pedestrians, notwithstanding the rights and responsibilities that may be imposed under other provisions of the Vehicle Code. Ill. Rev. Stat. 1989, ch. 95$^1$/$_2$, par. 11—1003.1. Consistent with this provision, the courts in Illinois have long recognized that a pedestrian is not barred from recovery as a matter of law for failing to cross a thoroughfare in a marked crosswalk. See *Newton v. Meissner*, 76 Ill. App. 3d 479, 490 (1979); *Moore v. Checker Taxi Co.*, 133 Ill. App. 2d 588, 591 (1971).

Plaintiff's theory was that Phillippart was justified in crossing outside of the marked crosswalk because the location of Dobson's truck obscured her view of traffic and made use of the crosswalk unsafe. Although my col-

leagues draw a different conclusion based on the evidence, they misconstrue the facts. Contrary to their characterization, Phillippart's view of traffic was not entirely obstructed at the point of her attempted crossing. Phillippart could still assess westbound traffic by looking around the front of Dobson's truck, and that location actually provided a better view of the eastbound lanes than she would have had at the crosswalk. Under these circumstances, crossing the street at the front of the truck rather than behind it at the crosswalk was, on balance, the safest course for Phillippart to have taken. That is what the evidence showed and that is what the jury found. To the extent that Phillippart should have maintained a closer lookout before stepping into the traffic lane, her lack of due care was reflected in the jury's apportionment of comparative fault. It is not the province of this court to reweigh the evidence and substitute its judgment for the jury's. *Maple v. Gustafson*, 151 Ill. 2d 445, 452 (1992).

If the jurors who heard and decided this case ever read the majority's disposition, I feel certain that they will be as surprised as I was by what my colleagues have made of the facts and the law. Seeing their findings and conclusions so readily disregarded, they are apt to wonder why they even bothered to report for service. I cannot blame them. Their work, their attention, their adherence to the law have all been rendered meaningless, and for no legitimate reason.

ADM Trucking is a division of Archer-Daniels-Midland Company, an international agribusiness, the self-styled "supermarket to the world." Phillippart was a high school student. In focusing on Phillippart's conduct rather than on the carelessness of ADM's driver and his flagrant violation of the law, what the majority is ultimately saying is that a teenager should be held to a higher standard of care than a multinational corpora-

tion. This perverse conception of justice has been expressed before. See, *e.g.*, *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110 (1995). I still cannot accept it.

The majority's position stems, I think, from an antiquated and misguided deference to the demands of private industry. Unlike my colleagues, I do not believe that corporate enterprise must be given precedence over human welfare in order to flourish. If the success of Illinois commerce depends on enabling multinational corporations to maim and kill schoolchildren with impunity, we are lost.

For the foregoing reasons, I respectfully dissent.