JOHN PERRI, Father and Next Friend of Leah Perri, a Minor, *et al.*, Plaintiffs-Appellants, v. FURAMA RESTAURANT, INC., Defendant-Appellee.

First District (1st Division)    No. 1—01—1909

Opinion filed November 27, 2002.

Robert A. Clifford, of Clifford Law Offices, and Richard L. Pullano, D. Seth Holliday, and Robert P. Sheridan, all of Law Office of Richard L. Pullano, both of Chicago, for appellants.

Lloyd E. Dyer, Jr., of Mountcastle, Kelly & Dyer, P.C., of Wheaton, for appellee.

JUSTICE COHEN delivered the opinion of the court:

Plaintiffs John and Amy Perri[1], individually and on behalf of their infant daughter Leah Perri, sued defendant Furama Restaurant, Inc., after Leah was burned by hot tea at defendant's restaurant. Leah's injury occurred when Leah's four-year-old cousin Jordan Marsala spun a lazy Susan upon which a pot of hot tea had been placed without the plaintiffs' knowledge. The trial court granted summary judgment in favor of defendant, finding that Jordan's parents had a duty to supervise Jordan and, because of the parents' failure to supervise Jordan, defendant owed no duty to protect Leah from the injuries she sustained. Plaintiffs appeal.

## FACTS[2]

On May 21, 1995, plaintiffs and their three-month-old daughter

---

[1]At her deposition, Amy testified that her correct name is Amy Green and that, although she is married to John Perri, she has never been known by the name Amy Perri. Nevertheless, Amy acknowledged that she is the Amy Perri referred to in the caption of this case.

[2]The underlying facts in this case are largely undisputed. Disputes as to particular details are noted, as necessary, herein.

Leah met Amy's sister Karen Green, Karen's husband Andrew Marsala, and Karen and Andrew's children Jillian and Jordan for *dim sum* brunch at defendant's restaurant. The group was led to a large round table with a lazy Susan in the center. Leah, asleep in her carriage, was positioned parallel to the table between her parents. So Ching Wong, a waitress at defendant's restaurant, greeted the party as they arrived at the table and then returned to the kitchen to get a pot of hot tea. Wong returned and placed the teapot on the lazy Susan approximately halfway between the center and the edge. Wong did not say anything to anyone in the party when she placed the tea on the table and none of the adults at the table noticed the tea. After serving the tea, Wong returned to the kitchen to get ice water for the party.

A short time later[3], Jordan spun the lazy Susan, causing the pot of tea to tip over and spill. Amy testified that Jillian was already seated at the time of the accident, but the remainder of the group was "in the process of sitting down." Amy testified that she was "on [her] way down" when hot liquid struck her hand and thigh. Leah began screaming a second or two later and John was struck last. Leah suffered severe burns over 10% of her body.

Plaintiffs filed suit against defendant, alleging Wong was negligent for placing a pot of hot tea on a lazy Susan without alerting the adults at the table to the presence of the tea. Plaintiffs further alleged that defendant knew or should have known both that: (1) the teapot could tip if the lazy Susan were spun; and (2) minor children were present at plaintiffs' table. John, as Leah's father and next friend, filed suit on Leah's behalf seeking damages for his daughter's injuries. John and Amy sued individually pursuant to the Rights of Married Persons Act (Family Expense Act) (750 ILCS 65/15 (West 2000)) to recover the expenses they incurred for treatment of Leah's injuries.

Defendant moved for summary judgment, arguing that defendant owed no duty to Leah because Jordan's parents had a duty to supervise their son and therefore defendant could not have foreseen the accident that occurred. Additionally, defendant argued that it was not liable for Leah's injuries because any negligence on its part in placing the teapot on the lazy Susan did not proximately cause Leah's injuries but merely

---

[3]Both Amy and John testified at their depositions that the accident occurred less than 30 seconds after the party arrived at the table. Defendant contends that the timing of the accident is contested because Wong testified at her deposition that the accident occurred while she was on her way to get ice water for the group after having served the tea. Defendant's apparent inference is that the activities described by Wong would have required more than 30 seconds; however, defendant points to no evidence in the record that would support such an inference.

furnished a condition that made those injuries possible. Plaintiffs responded that, because the adults at the table were unaware of the pot of tea, the duty of Jordan's parents to supervise him did not absolve defendant of its duty to exercise reasonable care. Plaintiffs further argued that Jordan's actions in spinning the lazy Susan were not the sole proximate cause of the accident and that defendant's negligence was a proximate cause and not a mere condition.

Following a hearing, the trial court granted summary judgment in favor of defendant. In reaching her conclusion, the trial judge commented:

> "I agree with the Defendant that there was no duty here to safeguard this Leah Perri from the independent intervening act of *** Jordan Marsala.
>
> It is the plaintiffs' position that the restaurant breached its duty of care by placing a teapot on the lazy [S]usan, but I would say that that's what Asian restaurants do. They serve tea whether it's ordered or not.
>
> Whether or not the parents were aware of the pot of tea does not make it any less visible. The whole purpose of the shifting of the duty by the Court to the parents to supervise children is precisely what happened in this case. Children, especially age 4, are unpredictable and somewhat powerful, perhaps more so than their size indicates.
>
> The specific rationale for [excepting] from the restaurant's duty is because children must be supervised because they are unpredictable.
>
> Unfortunately[,] being the mother of three children, I can't imagine what the Perri's went through on this, but that doesn't change the fact that [defendant] did nothing which was dangerous or in violation of any duty that it might have owed its customers in this case.
>
> If I were to accept the plaintiff's position[,] there must be a grace period between the time children accompanied by parents arrive and when the parents' duty to supervise them kicks in. Is it upon being seated, everybody in their own chair, or is it after the coats are hung up[?] I am not sure. I am not prepared to start mincing as to what happens as people arrive in a business establishment and get seated for an activity. I don't think I need to.
>
> I think it is clear in this case that the apparent cause of this incident was Jordan because nobody saw it. The presence of a teapot on the table is not unforeseeable, and I think the duty to supervise removes from the restaurant the requirement that it safeguard certain situations because minors are there and are not being watched."

The court further clarified that "[a]s a matter of law, under the circumstances *** stated, the ruling is that [defendant] did exercise ordinary care ."

Plaintiffs' posttrial motion was denied. Plaintiffs now appeal.

## ANALYSIS

■ Summary judgment is proper if the pleadings, depositions and admissions on file, along with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2000). The purpose of summary judgment is not to try a question of fact, but simply to determine whether a genuine issue of triable fact exists. *Watkins v. Schmitt*, 172 Ill. 2d 193, 203 (1996). It is well established that in determining whether a genuine issue of material fact exists, a court must construe the pleadings, depositions, admissions and affidavits strictly against the movant and liberally in favor of the opponent. *Schmitt*, 172 Ill. 2d at 203. In addition, any evidence that would be inadmissible at trial cannot be considered by the court in support of or opposition to a motion for summary judgment. *Schmitt*, 172 Ill. 2d at 203-04. Because the propriety of an order granting summary judgment is a question of law, our review of such an order is *de novo*. *Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905, 909 (1994).

■ To sustain a cause of action for negligence, a plaintiff must establish the existence of a duty owed by defendant to plaintiff, a breach of that duty and an injury to plaintiff proximately caused by the breach. *Hills v. Bridgeview Little League Ass'n*, 195 Ill. 2d 210, 228 (2000). Defendant argues that summary judgment was properly granted both because defendant owed no duty to plaintiffs and because any negligence on defendant's part did not proximately cause Leah's injuries. We address each of these contentions in turn.

## I. Duty

■ The existence of a duty is a question of law to be determined by the court. *Ward v. K mart*, 136 Ill. 2d 132, 140 (1990). In determining whether a duty exists, the court considers: (1) the reasonable foreseeability of injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against injury; and (4) the consequences of placing that burden upon the defendant. *Ward*, 136 Ill. 2d at 140-41. Because simply alerting adult customers to the presence of the hot tea presents a particularly minimal burden which we would not hesitate to impose on restaurants, the real issue in this case is whether the injury was sufficiently foreseeable and likely that we would be justified in placing a duty on defendant to guard against such an injury.

■ As a general rule, a property owner owes no greater duty of care to small children than the duty owed to adults. *Kahn v. James Burton Co.*, 5 Ill. 2d 614, 625 (1955). An exception to this general rule exists, however, when a property owner:

> "knows, or should know, that young children [are present in] the vicinity of *** a dangerous [condition], which is likely to cause injury to them because they, by reason of their immaturity, are incapable of appreciating the risk involved, and where the expense or inconvenience of remedying the condition is slight compared to the risk to the children." *Kahn*, 5 Ill. 2d at 625.

■ Defendant in this case does not deny that it knew or should have known that young children were at plaintiffs' table. Defendant further concedes that, because of his immaturity, Jordan was incapable of appreciating the risk presented by the hot tea on the lazy Susan. Finally, defendant acknowledges that a child Jordan's age might foreseeably "engage in playful and unpredictable behavior"—such as spinning or otherwise playing with the lazy Susan. Under these circumstances, a pot of hot tea resting on a lazy Susan is a dangerous condition likely to cause injury when young children are present. Applying the analysis in *Kahn*, defendant owed a duty to guard against the injury in this case. 5 Ill. 2d at 625.

Defendant correctly notes that *Kahn* dealt with a situation involving an unaccompanied minor, whereas the children in the instant case were accompanied by their parents. Defendant argues that the injury in this case was therefore not reasonably foreseeable because it was not reasonably foreseeable that Jordan's parents would fail to adequately supervise him. Citing to a line of cases addressing a parent's duty to supervise young children (see, *e.g., Driscoll v. Rasmussen*, 35 Ill. 2d 74 (1966); *Keller v. Mols*, 129 Ill. App. 3d 208 (1984); *Kay v. Ludwick*, 87 Ill. App. 2d 114 (1967)), defendant argues that it owed no duty to prevent the injury that resulted from Jordan's actions because Jordan was accompanied by his parents at the time of the accident.

Defendant's reliance on these cases is misplaced. A defendant is "not necessarily absolved of all [responsibility] to very young children merely because supervision of young children is generally the responsibility of their parents." *T.T. v. Kim*, 278 Ill. App. 3d 11, 18-19 (1996), citing *Strode v. Becker*, 206 Ill. App. 3d 398, 405 (1990). A defendant can be held responsible for a child's injuries—notwithstanding a parent's duty to supervise—where recognized theories of liability support such a finding. *Driscoll*, 35 Ill. 2d at 79. In other words, a parent's duty to supervise absolves a defendant of liability only where consideration of the duty to supervise precludes a finding of liability

under recognized theories—for example, where an injury is not foreseeable unless a parent or caretaker fails to properly supervise a minor child (see, *e.g.*, *O'Clair v. Dumelle*, 735 F. Supp. 1344 (N.D. Ill. 1990) (finding an injury unforeseeable because parent's failure to adequately supervise was not reasonably foreseeable)).

Here, the evidence presented by both parties demonstrates that the group, which included a two-year-old and a four-year-old child, was not yet seated when, unbeknownst to the adults, Wong placed the pot of tea on the lazy Susan. None of the adults in the group actually saw the pot of tea until after the injury occurred. A parent's duty to supervise requires the parent to exercise due care in the face of obvious risks. See, *e.g.*, *Salinas v. Chicago Park District*, 189 Ill. App. 3d 55, 62 (1989) ("duty to supervise *** child as to obvious risks lies primarily with the accompanying parent"); *Strode*, 206 Ill. App. 3d at 405 (when children are supervised by their parents, "landowners may be relieved of duty to warn [the children] of or remove dangerous instrumentality the danger from which is apparent").

Even the most vigilant parent cannot be omniscient—the duty to supervise does not require a parent to prevent a child from causing or suffering harm from a danger of which the parent has no reason to be aware. If parents or caregivers are unaware of a particular danger, it is reasonably foreseeable that they will fail to prevent a minor child from encountering that danger. Thus, while defendant was certainly entitled to rely on the adults in plaintiffs' group to protect their children from dangers of which the adults were or should have been aware, defendant is not absolved of its duty under *Kahn* simply because Jordan was accompanied by his parents (*T.T.*, 278 Ill. App. 3d at 18-19).

Defendant suggests that "the true factual issue with respect to the duty to supervise is whether plaintiffs[4] were in a position to observe the risk and to prevent Jordan from causing the accident." Defendant argues that, because the group was at the table long enough for Jordan to discover and spin the lazy Susan, the adults "were clearly in a position in which they could have observed the risk"—in other words, defendant argues that the pot of hot tea was an open and obvious hazard. The trial court apparently accepted this argument, noting that "[w]hether or not the parents were aware of the teapot does not

---

[4]It is unclear whether defendant has confused plaintiffs with Jordan's parents or whether defendant is suggesting that plaintiffs had a duty to supervise their nephew even though Jordan was accompanied by his parents.

make it any less visible."[5] Whether a condition presents an open and obvious danger, however, is a question of fact. *Pullia v. Builders Square, Inc.*, 265 Ill. App. 3d 933, 939 (1994). Indeed, defendant concedes that the obviousness of the danger presents a "factual issue." Summary judgment is inappropriate in the face of genuine issues of material fact. 735 ILCS 5/2—1005(c) (West 2000).

Furthermore, a property owner owes a duty of care even in the face of a known and obvious danger if the property owner should anticipate the harm despite the "obvious" nature of the danger. *Ward*, 136 Ill. 2d at 149. Wong's deposition testimony indicates that the hot tea was not on the table when the group first arrived but rather was served shortly thereafter. Plaintiffs presented evidence that the group was at the table for less than 30 seconds and the adults were not yet seated when the accident occurred. Under these circumstances, defendant should have anticipated that Jordan's parents would fail to notice or prevent Jordan from disturbing the pot of hot tea, even if the teapot was in fact "obvious." *Ward*, 136 Ill. 2d at 156.

Based on the foregoing analysis, we find that defendant owed a duty to guard against the injury in this case. Summary judgment, therefore, cannot properly be predicated on a lack of duty.

## II. Proximate Cause

■ Defendant next argues that any negligence on its part cannot have been the proximate cause of Leah's injuries. Proximate cause consists of two distinct requirements: cause in fact and legal cause. *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 257-58 (1999). Cause in fact exists where the negligence at issue is a material and substantial element in bringing about the injury. *Galman*, 188 Ill. 2d at 258. Legal cause exists when the injury is of a type a reasonable person would see as likely to result from his conduct. *Galman*, 188 Ill. 2d at 258. Proximate cause is ordinarily a question of fact to be determined from all the attending circumstances, and it can only be determined as a matter of law when the facts are not only undisputed but are also such that there can be no difference in the judgment of

---

[5]The trial court also apparently concluded that plaintiffs and Jordan's parents should have anticipated the presence of the hot tea because "Asian restaurants *** serve hot tea whether it's ordered or not." Such a factual determination—not compelled by any undisputed evidence—is inappropriate on summary judgment. The purpose of summary judgment is not to try a question of fact, but simply to determine whether a genuine issue of triable fact exists. *Schmitt*, 172 Ill. 2d at 203. Furthermore, we are not prepared to adopt a rule that a restaurant's duty to its customers depends on the ethnic origin of the cuisine being served.

reasonable persons as to the inferences to be drawn from them. *Seef v. Ingalls Memorial Hospital*, 311 Ill. App. 3d 7, 19 (1999).

■ Defendant first argues that any negligence on its part was not a cause of Leah's injuries but merely a condition, which made the injury possible. If the negligence charged does nothing more than furnish a condition by which the injury is made possible, and that condition facilitates an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury. *Galman*, 188 Ill. 2d at 257. Whether a defendant's conduct was a cause of injury or merely a condition that made the injury possible turns on whether the defendant's conduct was a material and substantial element in bringing about the injury. *Galman*, 188 Ill. 2d at 259. A defendant's conduct is a material and substantial element in bringing about an injury if, absent that conduct, the injury would not have occurred. *Galman*, 188 Ill. 2d at 258.

Defendant also argues that Jordan's actions in spinning the lazy Susan—not defendant's actions in placing the tea on the lazy Susan— proximately caused Leah's injuries. The test that should be applied where injury results from the intervening act of a third party is whether the defendant reasonably might have anticipated the intervening efficient cause as a natural and probable result of the defendant's own negligence. *Galman*, 188 Ill. 2d at 259.

A reasonable fact finder could conclude that, absent Wong's actions in placing the hot tea on the lazy Susan without notice, Leah's injuries would not have occurred. Likewise, a reasonable fact finder could conclude that defendant might reasonably have anticipated that Jordan would spin the lazy Susan under the circumstances in this case. Accordingly, proximate cause is not an issue that can be decided as a matter of law in this case. *Seef*, 311 Ill. App. 3d 19. Because proximate cause presents a genuine issue of material fact, summary judgment was not appropriate on this basis. 735 ILCS 5/2—1005(c) (West 2000).

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Cook County granting summary judgment in favor of defendant is reversed. This cause is remanded for further proceedings.

Reversed; cause remanded.

GORDON, P.J., and McNULTY, J., concur.