2019 IL App (1st) 191214-U

FIFTH DIVISION
December 13, 2019

No. 1-19-1214

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| BRIANA ARTEAGA, as mother and next friend of JAYLEIN ARTEAGA, a minor, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 18 L 1481 |
| NEW LEE WING WAH, INC., d/b/a LEE WING WAH, | ) ) | |
| Defendant-Appellee. | ) ) | Honorable Kathy M. Flanagan, Judge, presiding. |

JUSTICE DELORT delivered the judgment of the court.
Presiding Justice Hoffman and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The circuit court properly granted defendant's motion for summary judgment. Plaintiff did not raise a genuine issue of material fact as to whether defendant's alleged negligence was the cause of an injury.

¶ 2   After her daughter Jaylein was allegedly scalded by spilled tea, Briana Arteaga filed a one-count negligence complaint against Chinese restaurant New Lee Wing Wah ("the restaurant"). The circuit court granted the restaurant's motion for summary judgment, finding that the restaurant owed no duty of care to Jaylein. Even if there had been such a duty, the court found, Arteaga had

presented no evidence that the duty was breached or that any act or omission by the restaurant was the proximate cause of Jaylein's injuries. We affirm.

¶ 3                                    BACKGROUND

¶ 4      At her deposition, Arteaga testified that she and her daughter went to New Lee Wing Wah for dinner. They were part of a party of nine adults and four children. The hostess showed the party to a large round table. Although nobody asked for tea, a waitress placed a teapot on the table while the guests were still getting situated. As Arteaga was preparing to sit down, she heard her daughter scream. When she looked up, she saw the teapot in the center of the table, "pretty far" from Jaylein, and steam emanating from the liquid that had evidently spilled on the tablecloth.

¶ 5      Arteaga did not know how the tea spilled or how it got on Jaylein. She was totally unaware of the teapot until after her daughter screamed, so she did not know how or when it was placed on the table or how hot the contents of the pot were. She did not know how hot tea is typically brewed, nor whether the restaurant deviated from any industry standards.

¶ 6      Mei Ling Li testified that she was the waitress who served the hot tea to Artega's table. She testified that the practice at the restaurant is to serve ice water and hot tea to every table. The waitstaff are instructed not to place teapots on lazy susans and to warn the patrons about the hot tea. The waitstaff at the restaurant do not pour the tea for the customers. In her four years working at the restaurant, Li had not heard any complaints about the temperature of the tea. Nor had she heard of any teapots spilling or customers being burned by tea.

¶ 7      Li testified that she placed the tea on the side of the table where the adults were sitting, opposite Jaylein. She also warned the guests that the tea was hot but did not remember whether anybody acknowledged her warning. After she put down the teapot, she turned away from the table. Shortly thereafter, she heard a child crying. She looked back at the table and saw that the

teapot was not where she had placed it. Rather, it was closer to the crying child. Li did not see how the tea spilled.

¶ 8     Joyce Lem was also working as a waitress on the day that Artega and Jaylein visited the restaurant. She testified that in her thirteen years as a waitress at the restaurant, no teapot had spilled, nor had she heard complaints about the temperature of the tea or customers being burned.

¶ 9     Lem testified that she brought out drinking water for Artega's party. She saw the teapot on the table, on the side opposite Jaylein. She warned the party that the tea was hot, though nobody verbally acknowledged her warning. Shortly after she turned away from the table, she heard Jaylein scream. When she looked back, she saw that Jaylein was "completely wet" and that the teapot was on its side on the opposite side of the table from where it had been placed.

¶ 10    Pui Yeng Eng testified that she is the owner and manager of the restaurant. It was she who showed Artega and her party to their table. She affirmed that it is the practice of the restaurant to serve hot tea to all the customers when they first arrive. She did not see the teapot fall over, but she did observe that two or three cups of tea had been poured.

¶ 11    The restaurant moved for summary judgment, arguing that Artega failed to raise genuine issues of material fact as to duty, breach, and proximate causation. The court ruled that although businesses owe a general duty of care toward their patrons, there was no duty of care in this case. The court determined that "the foreseeability and likelihood of injury" from the spilled tea was slight. Further, imposing a duty of care on the restaurant would be an undue burden.

¶ 12    Moreover, the court held that there was no genuine issue of material fact regarding breach or causation. The court observed that Arteaga had presented no evidence about how the tea spilled or how the waitstaff had breached any duty of care. Arteaga filed a motion for reconsideration, which the court denied. This appeal followed.

3

¶ 13                              ANALYSIS

¶ 14     On appeal, Arteaga contends that the restaurant was not entitled to summary judgment. She argues that the court erred in finding that the restaurant had no duty of care toward Jaylein and in finding that she had not raised a genuine issue of material fact for either breach or causation. We disagree.

¶ 15     Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). Summary judgment should only be granted when the moving party's right to judgment is "clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). To determine whether there is a genuine issue of material fact, we construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the opponent. *Id.* at 131-32. If reasonable people would draw divergent inferences from undisputed facts, summary judgment must be denied. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). However, "summary judgment requires the responding party to come forward with the evidence that it has—it is the put up or shut up moment in a lawsuit." (Internal quotation marks omitted.) *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 14. We review the circuit court's decision on a motion for summary judgment *de novo*. *Id.*

¶ 16     The elements of a cause of action for negligence are (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) an injury proximately caused by the breach, and (4) damages. *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, 194-95 (1995). A defendant is entitled to summary judgment if the plaintiff fails to raise a genuine issue of material fact as to any or all of these elements.

¶ 17    Proximate cause consists of both cause in fact and legal cause. *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 257-58 (1999). The defendant's act or omission is a cause in fact if it was a material and substantial element in bringing about the injury. *Id.* at 258. The defendant's conduct is a legal cause if the injury is of a type a reasonable person would see as likely to result from his conduct. *Id.* Although proximate cause is usually a question of fact, it can be determined as a matter of law if the facts are undisputed and reasonable people could not differ in their interpretation of them. *Seef v. Ingalls Memorial Hospital*, 311 Ill. App. 3d 7, 19 (1999). Proximate cause cannot be established by speculation, surmise, or conjecture. *Schultz v. Hennessy Industries, Inc.*, 222 Ill. App. 3d 532, 540 (1991). To establish a genuine issue of material fact, a plaintiff must present affirmative and positive evidence that defendant proximately caused her injuries. *Chmielewski v. Kahlfeldt*, 237 Ill. App. 3d 129, 137 (1992).

¶ 18    As to causation, Arteaga argues that she presented enough evidence to create a genuine issue of material fact as to the whether the restaurant's negligence was the cause of Jaylein's injuries. Specifically, she points out that Li placed the hot tea on the table without Arteaga's knowledge, the party was not yet totally seated when she did so, and the injury happened very shortly thereafter. Based on these undisputed facts, Arteaga contends that it would be reasonable to infer that some negligent act or omission by the restaurant's staff was the proximate cause of Jaylein's injuries.

¶ 19    Arteaga argues that this case is virtually identical to *Perri v. Furama Restaurant, Inc.*, 335 Ill. App. 3d 825 (2002). In *Perri*, a small child was scalded when a four-year-old spun a lazy susan that had a teapot on it. *Id.* at 826. This court reversed the trial court's summary judgment in favor of the defendant, holding that the plaintiffs had raised a genuine issue of material fact as to whether any negligence on the defendant's part was the proximate cause of the child's injuries. *Id.* at 833.

However, this case is distinguishable. In that case, the plaintiffs presented evidence that the teapot had been placed on a lazy susan without any notice to the guests and that the spill happened when a child spun the lazy susan. *Id.* at 827. Importantly, we did not find that the act of placing the teapot on the lazy susan was the proximate cause of the child's injuries, only that a reasonable fact finder could come to that conclusion. *Id.*

¶ 20    We must view all the evidence in the light most favorable to Arteaga, but we need not ignore evidence or inferences that are unfavorable to her. *Yacko v. Curtis*, 339 Ill. App. 3d 299, 302 (2003). There simply is no evidence about how the tea spilled. The undisputed evidence is that nobody from Arteaga's party ordered hot tea.[1] Nevertheless, a waitress placed the teapot on the adult side of the table and not on the lazy susan. There is no evidence that the pot was improperly placed on the table or that the tea was unreasonably hot. And, crucially, the only evidence of what happened between the time that the tea was served and the time that it spilled is that somebody other than the restaurant staff apparently poured two or three cups of tea and moved the teapot. Based on this undisputed evidence, Arteaga failed to raise a genuine issue of material fact as to the proximate cause of her daughter's injuries.

¶ 21    Having determined that Arteaga failed to raise a genuine issue of material fact as to causation, we need not address the issues of the restaurant's duty of care toward Jaylein or whether there was a breach of that duty. See *Harlin v. Sears Roebuck & Co.*, 369 Ill. App. 3d 27, 31-32 (2006) ("this court may affirm a trial court's grant of summary judgment on any basis apparent in

---

[1] Like the trial court in *Perri*, the circuit court in this case noted that customers want and expect to be served hot tea upon arrival at Asian restaurants. See *Perri*, 335 Ill. App. 3d at 832, n.5. See also Wonona W. & Irving B. Chang and Helene W. & Austin H. Kutscher, An Encyclopedia of Chinese Food and Cooking, at 500 (1970) ("A guest is always offered tea upon arrival, no matter what the time of day or night."). We need not address the propriety of that conclusion based on the undisputed evidence, nor how that argument would bear on the restaurant's duty of care.

the record, regardless of whether the trial court relied on that basis or whether the court's reasoning was correct.").

¶ 22                                                    CONCLUSION

¶ 23     Accordingly, we affirm the judgment of the circuit court.

¶ 24     Affirmed.