NOTICE

Decision filed 06/14/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 200193-U

NO. 5-20-0193

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| TERRY BOVEE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Jackson County. |
| | ) | |
| v. | ) | |
| | ) | No. 13-L-8 |
| | ) | |
| CHERYL BOVEE, CLAUDIA BROOM, | ) | |
| and MICHAEL ROHLING, | ) | Honorable |
| | ) | Amanda Byassee Gott, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Barberis and Wharton concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court's decision is affirmed where the court did not err in limiting the damages that the plaintiff, Terry Bovee, could recover after his ex-wife, Cheryl Bovee, trespassed onto his property, where the court properly instructed the jury as to the definition of nominal damages and that damages in a trespass action are presumed; where the court did not err in dismissing Terry's claim for intrusion upon seclusion; where Terry failed to meet his burden of showing that the court was not impartial; and where the court did not err in granting summary judgment in favor of Michael Rohling, Cheryl's then-boyfriend, as there was no evidence that he participated in the trespass.

¶ 2     This is an appeal from various orders entered by the circuit court of Jackson County relating to a civil complaint that the plaintiff, Terry Bovee, filed against the defendant,

1

Cheryl Bovee, for damages that he suffered as a result of Cheryl trespassing onto his property and reporting him to the Jackson County Sheriff's Department for illegal activity that she discovered during the trespass. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Terry and Cheryl were married and raised two adult children, but at the time of the incident at issue here, they were divorced. Until their separation, they resided together in the marital home located on Egret Lake Road in Jackson County. After their separation, Cheryl moved from the residence, and Terry remained in the home. Subsequent to the divorce, on June 25, 2011, Cheryl entered the residence without Terry's permission and while he was not at home; she used a key that Terry did not know she had. While in the residence, Cheryl discovered a substantial number of marijuana plants growing in the basement and took photographs of them. She later contacted the Jackson County Sheriff's Department to report what she had seen and emailed the photographs to them. Her unlawful entry into the home caused no discernable physical damage to the property.

¶ 5     Subsequently, a search warrant was executed at the residence, and the investigating officers discovered a hydroponic marijuana growing operation in the basement, which consisted of specialized lighting and venting, approximately 400 marijuana plants in various states of growth, and a large amount of dried marijuana. On June 27, 2011, Terry was charged with a Class 1 felony related to the production of more than 200 cannabis plants at his residence. Terry pled guilty. On July 5, 2011, a civil forfeiture action was filed against Terry in the United States District Court for the Southern District of Illinois, which asserted that his residence was subject to forfeiture as a result of him growing marijuana

2

there. Terry failed to contest the forfeiture action, and a default judgment was entered against him on July 31, 2012. In the order, the federal court ordered the sale of the residence and set out the distribution of the proceeds from the sale.

¶ 6   On January 25, 2013, Terry filed his initial three-count complaint against the defendant, John Doe,[1] and the respondents in discovery, Whitney Bovee (Cheryl and Terry's daughter) and Claudia Broom (Terry's sister), bringing claims of trespass, intrusion upon seclusion, and public disclosure of private facts. In the complaint, Terry alleged that the defendant John Doe broke into his home, took pictures of his growing operation, and then gave those photographs to Cheryl. Terry also asserted that the respondents in discovery either knew the identity of John Doe or had information that could assist him in discovering John Doe's identity. Terry contended that, as a result of the trespass, he suffered economic losses, including the loss of his residence, mental anguish and emotional distress, and loss of reputation and integrity in the community. On February 1, 2013, Claudia filed a motion to dismiss Terry's initial complaint for failure to state a cause of action because Terry failed to name an identifiable person as a defendant.

¶ 7   On February 22, 2013, Terry filed a first amended complaint, which replaced John Doe as the defendant in the action with Michael Rohling and Cheryl. Michael was Cheryl's boyfriend at the time. In the first amended complaint, Terry asserted that one or both of the defendants broke into his home, took photographs of his growing operation for the purpose of initiating a criminal prosecution against him, and reported his illegal activity to the

---

[1]Terry initially filed the complaint against John Doe because, at the time that he filed the complaint, he did not know who had broken into his house.

3

Jackson County Sheriff's Department. The remaining allegations (and the causes of action) were substantially the same as those in the initial complaint.

¶ 8    On September 19, 2013, Whitney filed a motion to dismiss herself from the case because more than six months had elapsed since she was served, and no attempt had been made to convert her from a respondent in discovery to a defendant. On October 10, 2013, the trial court entered an order dismissing her from the case. On November 12, 2013, Claudia filed a motion to dismiss asserting that she should also be dismissed from the case as no attempt had been made to convert her from a respondent in discovery to a defendant. On November 15, 2013, the court entered an order by docket entry granting the motion to dismiss.

¶ 9    On December 12, 2013, Michael filed a motion for summary judgment on the basis that there was no evidence to support Terry's allegations that Michael was involved in the trespass and subsequent reporting of Terry's illegal activity. Attached to Michael's motion was his January 13, 2012, discovery deposition, at which he testified that he was not present in Terry's home during the incident in question, and although he was present when Cheryl contacted the Jackson County Sheriff's Department, he had advised her against making the call.

¶ 10   On January 25, 2016, Cheryl and Michael filed a combined motion for summary judgment and motion to dismiss pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2014)). In the motion, they argued that the intrusion upon seclusion claim, which required that the matter into which the intrusion occurred be private, and the public disclosure of private facts claim should be dismissed

4

for failure to state a cause of action because criminal activity, such as illegally growing marijuana, is not a protected activity; it was a matter of great public concern and not a private activity. Also, the motion asserted that Cheryl's statements regarding Terry's criminal activities to the authorities would not be considered a public disclosure because statements made to law enforcement officials were privileged. With regard to the trespass claim, the motion admitted that there was no dispute that Cheryl had unlawfully entered Terry's residence but contended that there was no evidence that Michael had also entered the residence that day.

¶ 11 On June 6, 2016, the trial court entered an order on all pending motions and found as follows. First, the court granted Michael's motion for summary judgment regarding count II (trespass), count IV (intrusion upon seclusion), and count VI (public disclosure of private facts), finding that there were no genuine issues of material facts regarding those claims. Second, the court granted Cheryl's motion for summary judgment regarding count III (intrusion upon seclusion) and count V (public disclosure of private facts) as there were no genuine issues of material facts as to those claims. Third, the court denied Cheryl's motion for summary judgment and motion to dismiss with regard to count I (trespass). Fourth, the court determined that both Michael's and Cheryl's motions to dismiss were moot because it had already granted summary judgment on the intrusion upon seclusion and public disclosure of private facts claims. The only remaining claim following the order was the trespass allegation against Cheryl.

¶ 12 On October 20, 2016, Terry filed a motion for leave to amend his prayer for relief to include a request for punitive damages on his trespass claim. On January 17, 2017,

Cheryl filed an objection to Terry's motion, arguing that a plaintiff could only recover punitive damages when he suffered actual damages that were proximately caused by a defendant's actions, Terry did not suffer from any actual damages from Cheryl's trespass, her trespass did not proximately cause the civil forfeiture of his residence and his felony conviction, and it was not reasonably foreseeable that a trespass would lead to the forfeiture of a person's house because of the owner's illegal activities.

¶ 13    On January 23, 2017, Cheryl filed a motion *in limine*, arguing, *inter alia*, that Terry should be prohibited from claiming: (1) physical damage to his residence because there was no actual damage to the house during the trespass; (2) emotional distress damages because he had offered no evidence that he suffered emotional distress as a result of the trespass, and any emotional distress that he suffered was the result of his illegal conduct; (3) loss of reputation or integrity because any damages that he suffered were the result of his illegal activity and not the trespass; (4) economic damages for the disruption to his business for not being able to conduct business outside the State of Illinois because he never asked the federal sentencing judge whether he could leave Illinois to conduct business, and any loss of income was speculative; (5) pain and suffering because there was no medical or expert testimony to support his claim for pain and suffering; and (6) damages for the loss of his home because it was his illegal conduct that resulted in the civil forfeiture of his home.

¶ 14    On July 19, 2017, the trial court entered an order granting Terry's motion for leave to amend his prayer for relief to include a request for punitive damages. On December 15, 2017, Terry filed a second amended complaint, which included an allegation that an

individual had assisted Cheryl at the time of the trespass, and she refused to name that individual.

¶ 15   On January 16, 2018, Cheryl filed a motion for partial summary judgment, contending that Terry could not show that any of his claimed damages were proximately caused by her conduct. In the motion, Cheryl noted that Terry was claiming that he suffered the following damages: loss of home equity, lost income, felony conviction fine and court fees, attorney fees, mortgage payments made on the residence after it was forfeited, property tax payments, moving expenses, loss of phone, loss of vehicle, fees from his vehicle impoundment, loss of job, repair costs for damages to his home, utility costs for the home, travel cost to and from the courthouse, and loss of future wages due to his felony conviction. Cheryl contended that the direct and proximate cause of all the claimed damages was Terry's criminal conduct and not her trespass. Cheryl argued that a reasonable person would not have anticipated that her trespass would cause the forfeiture of the owner's residence, the various criminal penalties, and secondary damages arising from the homeowner's criminal conviction. Moreover, Cheryl argued that her trespass, without Terry's intervening criminal conduct, would not have led to Terry's claimed damages.

¶ 16   On May 16, 2018, Terry filed a third amended complaint, contending that as a direct and proximate consequence of Cheryl's trespass, her reporting his illegal conduct to the sheriff's department, and his felony conviction, he suffered mental anguish, emotional distress, and loss of reputation in the community; he contended that his sleep patterns had

7

been disturbed, he consumed alcohol to excess, he was moody and irritable, he suffered from depression, he had anxiety episodes, and he had suicidal ideations.

¶ 17   On June 26, 2018, the trial court entered an order granting Cheryl's motion for partial summary judgment, finding that there was no basis for Terry to recover the type of damages that he sought to recover in his trespass claim. On July 17, 2019, the court entered another order, clarifying its June 2018 order. In this order, the court found that Cheryl's trespass was not the proximate cause of the damages prayed for by Terry. Instead, it found that Terry's criminal actions were the cause of his resulting felony conviction, the civil forfeiture of his residence, and his other claimed damages. The court found that a reasonable person would not have foreseen that entering Terry's home without permission would have resulted in the discovery of Terry's illegal marijuana growing operation or the consequences that resulted therefrom. The court noted that no one could say that absent Cheryl's trespass, Terry would not have ended up with the same legal consequences against him; the court noted that Terry could have been caught anytime while his illegal activities were ongoing. Thus, the court found that Terry could not recover for the compensatory damages that he prayed for in his complaint. The court also granted Cheryl's motion *in limine*, barring all evidence relating to these damages at trial. However, the court then found that Terry could proceed with his claim of intentional trespass for nominal damages and punitive damages.

¶ 18   On December 13, 2019, Terry filed a motion to reconsider, in which he acknowledged that he could not present evidence of the emotional distress that he suffered as a result of his conviction, but he argued that he should be able to present evidence of the

8

emotional distress that he suffered as a result of the trespass. On December 20, 2019, the trial court denied Terry's motion by docket entry.

¶ 19    A jury trial was held on January 13 through 15, 2020, and the following testimony was presented. Cheryl testified she was married to Terry for 27 years, their divorce was finalized in the fall of 2009, and he was awarded the marital residence. There was very little contact between her and Terry after the divorce, but on June 25, 2011, she entered his residence without his permission. She made sure that he was not at home at this time; she knew he was at a party because her friend, who was also at the party, let her know that he was there. She was able to enter the residence with a key that she had made while they were going through the divorce. While there, she entered the basement and took photographs of the marijuana plants that he had growing there. When she reported Terry's growing operation to the sheriff's department, she said that she did not know who had taken the photographs of Terry's basement; she claimed that the photographs were placed in her mailbox. However, later she recanted and admitted that she had taken the photographs. She acknowledged that she contacted the sheriff's department so they would search his house and discover the marijuana plants.

¶ 20    Before entering Terry's house, Cheryl was suspicious that he was doing something illegal because it appeared that he had money from another source, but she did not know where he was getting his money. She was also suspicious because there were numerous occasions where he would not allow their children to go into the basement, which was unusual because the basement was considered the family room where the children often hung out. She did not know what she was going to find in the basement, but she did suspect

9

he was growing marijuana. She went to his house that day to see what was going on because he had threatened her children, and she was worried about the safety of her family. She explained that Whitney had come to her extremely upset after an incident with Terry where he threatened that there was going to be a "train crash" that would hurt the entire family, and there was nothing that Whitney could do to stop it. Cheryl did not talk to anyone about going to Terry's house, and she went alone.

¶ 21 Cheryl acknowledged that while on hold with the Jackson County Sheriff's Department, she said to Michael, who was in the same room with her, that "[i]f I could put him [(meaning Terry)] away, I'll be perfectly happy. This will be our little thing for the rest of our lives." She explained that if Terry was not in her life anymore, she would not have to worry about her family's safety, and she was hoping that reporting his illegal activity would put an end to his threats. She further explained that, during their marriage, Terry was verbally and emotionally abusive to her and had been physically abusive to their children.

¶ 22 Michael testified that, at the time of the incident, he was Cheryl's boyfriend, and they were living together. Initially, Cheryl told him that she found the photographs of Terry's basement in their mailbox. He was briefly in the room during her phone conversation with the sheriff's department. The first time that he saw the photographs was when Cheryl had them pulled up on her computer screen.

¶ 23 Whitney testified that Terry and Cheryl were her parents. After their divorce, she was in contact with her father, and she had concerns about him, which she relayed to her mother. She explained that if she wanted to go to his house, he required her to make an

10

appointment, which she thought was strange. While at the house, he would not let her go into the basement to retrieve her personal belongings; she thought this was odd because she always hung out in the basement when she lived there. He had installed a barricade across the driveway and had also changed the locks to the house. He made negative comments about Cheryl, such as hoping that she got hit by a bus. One time when Whitney was at Terry's house, he was really aggravated and cornered her, saying that anyone who was involved in ruining his marriage or his relationship with his children would pay and that there was a "train crash" coming that could not be stopped. She was afraid and crying and went outside to get away for a bit. When outside, she observed that all of the windows in the walk-out basement were covered with bedsheets. She then left and went to her mother's residence. She told her mother about the incident; she was crying while she relayed the incident. Her mother was afraid that he would follow through with his threats.

¶ 24 Terry described his marriage to Cheryl as very good and that it was a marriage to which others aspired. He explained that Cheryl wanted a divorce because she was not happy. She never indicated that there were issues with emotional abuse between them or physical abuse between him and the children. He denied being physically abusive toward the children and denied telling Whitney that he hoped that Cheryl got hit by a bus. Prior to his arrest, Cheryl did not seek an order of protection against him. After the divorce, he did not have any contact with Cheryl, and he denied making negative statements about her to their mutual friends. He admitted that Whitney wanted to go into the basement to get some of her belongings, but he explained that the basement was "chaotic," and he got the items for her because he knew where they were. He admitted having a conversation with Whitney

11

where he used the phrase "train wreck" or "train crash," explaining that he was referring to the family chaos and how the family was a train wreck. He further explained that they were bickering back and forth, and he brought up the concept of parental alienation, which she did not want to hear about. At some point during the encounter, Whitney said that she was going to punch his girlfriend in the nose. As she was leaving, he gave her a hug and told her that he loved her. He claimed that during the conversation, Whitney was not emotional and was not crying.

¶ 25 Terry started growing marijuana in his basement about 15 months before his arrest. The door to the room where his growing operation was located was locked, and the key that unlocked his outside doors did not unlock that door. He believed that Cheryl entered that room by taking the door off the hinges, but he acknowledged that he did not know whether the door was taken off the hinges when the police came to his house to search for the marijuana. From the fall of 2009 until the date of the trespass, he had no communication with Cheryl, and she did not come onto his property. He acknowledged that it was his choice to grow marijuana in his basement, that he knew it was illegal, and that his conduct resulted in him being convicted of a Class 1 felony.

¶ 26 After hearing all of the testimony, the jury entered a verdict in favor of Terry and against Cheryl in the amount of $5 in nominal damages and $20,000 in punitive damages. On January 30, 2020, the trial court entered a written order setting forth the jury's findings.

¶ 27 On February 11, 2020, Terry filed a motion for a new trial, arguing that the trial court erred in preventing him from presenting evidence with regard to the loss of his home, the disruption of his business, and further costs associated with Cheryl's trespass and

subsequent call to the Jackson County Sheriff's Department; the court erred by not allowing him to present evidence of the emotional distress that he suffered as a result of the trespass; the court erred in failing to instruct the jury that he was entitled to compensatory damages and not just nominal damages; the court erred in excluding Michael's testimony that Cheryl sought to cover up the trespass; the court erred in allowing Cheryl to testify about her marriage with Terry and the alleged abuse that she endured; the court improperly dismissed his intrusion upon seclusion and public disclosure of private facts claims; the court erred in dismissing Michael from the case; the court erred in allowing Whitney to testify; the court erred by not allowing Jacqueline Buck, a psychiatrist, to testify about Cheryl's plan to alienate the children from him; the court erred in failing to instruct the jury on the definition of proximate cause; and the court erred in dismissing Whitney and Claudia from the case. On June 30, 2020, the trial court denied Terry's motion for a new trial. Terry appeals.

¶ 28                              II. ANALYSIS

¶ 29                              A. Damages

¶ 30    Terry first contends that the trial court erred in limiting his damages to nominal and punitive damages. Specifically, Terry argues that the court erred in finding that there was no causal connection between Cheryl's trespass and his claimed damages with regard to the loss of his residence, disruption to his business, his emotional distress, and other similar damages that he suffered after his felony conviction.

¶ 31    The term "proximate cause" includes two distinct requirements: cause in fact and legal cause. *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 395 (2004).

13

Generally, proximate cause is a question of fact; however, the lack of proximate cause may be determined by the trial court as a matter of law where the facts alleged do not sufficiently demonstrate both cause in fact and legal cause. *Id.* at 395-96.

¶ 32                                  1. *Cause in Fact*

¶ 33    To establish cause in fact, plaintiff must allege sufficient facts to show there is a reasonable certainty that defendant's acts caused the injury. *Id.* at 395. In making this determination, courts use either the "but for" test or the "substantial factor" test. *Freeman v. City of Chicago*, 2017 IL App (1st) 153644, ¶ 39. Under the "but for" test, the question is whether the injury would have occurred absent defendant's conduct, while the "substantial factor" test asks whether defendant's conduct was a substantial factor in bringing about the injury. *Id.*

¶ 34    Here, Terry contends that Cheryl's trespass was the cause in fact of his claimed damages, which included the forfeiture of his residence, the disruption to his business, and other secondary damages after he was convicted of the felony. We disagree. The compensatory damages identified by Terry were solely related to his voluntary decision to violate the law by setting up a marijuana growing operation in his basement. The civil forfeiture action was brought against him as a result of him pleading guilty to a Class 1 felony related to the production of more than 200 cannabis plants at his residence. Terry failed to contest that forfeiture action, and a default judgment was entered against him, resulting in the sale of his residence. If Terry had not chosen to operate an illegal growing operation inside his residence, he would not have suffered those claimed damages, regardless of Cheryl's trespass. Thus, those damages were not imposed upon him because

14

of Cheryl's trespass; they were the consequences of him committing a Class 1 felony, which triggered a civil forfeiture action. However, even assuming *arguendo* that Cheryl's actions were the cause in fact of the claimed damages, her trespass was not the legal cause of them.

¶ 35                                      2. *Legal Cause*

¶ 36    Legal cause requires proof that the injury was a reasonably foreseeable result of defendant's conduct. *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 456 (1992). "The proper inquiry regarding legal cause involves an assessment of foreseeability, in which we ask whether the injury is of a type that a reasonable person would see as a likely result of his conduct." *City of Chicago*, 213 Ill. 2d at 395.

¶ 37    When determining whether a plaintiff's injuries are proximately caused by defendant's conduct, Illinois courts have drawn a distinction between a condition and a cause. *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 257 (1999). If defendant's conduct does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by a subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury. *Id.* Rather, proximate cause exists where the intervening act was reasonably foreseeable to the party creating the condition as a natural and probable result of their own conduct. *Id.*

¶ 38    In *Galman*, a pedestrian died while attempting to cross the street mid-block in front of an illegally parked tanker truck. *Id.* at 254. The pedestrian's estate sued the driver who hit the pedestrian as well as the driver of the tanker truck and the trucking company for negligence. *Id.* at 255. The tank truck driver and the trucking company argued that the

15

illegally parked truck was not the proximate cause of the pedestrian's injuries, noting that there was a distinction between a condition and a cause. *Id*. at 257. Our supreme court concluded that the illegally parked tanker truck was a cause in fact of the pedestrian's fatal injuries in that had the truck driver not parked his truck illegally on the street, the pedestrian's injuries almost certainly would not have occurred. *Id*. at 260. The court acknowledged that the pedestrian still may have chosen to cross the street at mid-block instead of using the crosswalk, which was in clear violation of the law, but it concluded that she would have had an unobstructed view of the roadway and presumably would have timed her crossing to avoid a collision with oncoming traffic. *Id*.

¶ 39    However, the supreme court then determined that the illegally parked tanker truck was not the legal cause of the pedestrian's injuries. *Id*. In making the decision, the court noted that the question was whether it was reasonably foreseeable that violating a "no parking" sign at mid-block would likely result in a pedestrian ignoring a marked crosswalk at the corner, walking to mid-block, and attempting to cross a designated truck route blindly and in clear violation of the law. *Id*. at 261. Finding that it was not reasonably foreseeable, the court noted that the pedestrian's decision to jaywalk was entirely of her own making and that the tank truck driver neither caused her to make that decision nor reasonably could have anticipated that decision as a likely consequence of his conduct. *Id*. Thus, the court found the illegally parked truck was not the legal cause of the pedestrian's injuries. *Id*.

¶ 40    Here, the relevant inquiry is whether a reasonable person would have anticipated that her illegal entry into Terry's residence would have caused the forfeiture of his home, disruption to his business, and the secondary damages arising from the imposition of

16

criminal sanctions. This inquiry looks at what a reasonable person would foresee as the result of her conduct, not at what this specific defendant knew or should have known. *City of Chicago*, 213 Ill. 2d at 396. Cheryl's trespass and subsequent report to the sheriff's department furnished the condition making Terry's punishment possible, but it did not cause the imposition of the sanctions about which Terry complains. A reasonable person would not anticipate that trespassing into someone's home would result in that person losing their home, losing income, and the other claimed damages imposed upon Terry for his criminal conduct. Terry's decision to illegally grow marijuana in his basement was entirely of his own making, and Cheryl neither caused him to make that decision nor reasonably could have anticipated, as a natural and probable result of her trespass, that Terry would lose his residence and suffer disruption to his business as well as his other claimed damages. Thus, we find that because Cheryl's trespass does nothing more than furnish a condition by which Terry's injuries were made possible, her trespass was not the proximate cause of his injuries. See *Thompson v. County of Cook*, 154 Ill. 2d 374, 383 (1993) ("If a defendant's negligence does nothing more than furnish a condition by which injury is made possible, that negligence is not the proximate cause of injury.").

¶ 41     Moreover, the cases cited by Terry that allow a plaintiff who was engaging in criminal activity to sue in tort and recover damages are not applicable as we are not saying that Terry is prohibited from recovering his claimed damages solely because he engaged in criminal activity; instead, we are saying that he cannot establish that Cheryl's trespass was the proximate cause of his claimed injuries, so those damages are not recoverable.

17

¶ 42                                    3. *Emotional Distress*

¶ 43    Terry next contends that the trial court erred by not allowing him to present evidence

of his emotional distress damages.[2] In making this argument, he acknowledges that

emotional distress damages as a result of his arrest, conviction, and the resulting fine are

not recoverable but contends that the emotional distress damages that he suffered as a result

of Cheryl's trespass are recoverable.

¶ 44    A trial court's decision to grant a motion for partial summary judgment is reviewed

*de novo*. *Sinclair Oil Corp. v. Allianz Underwriters Insurance Co.*, 2015 IL App (5th)

140069, ¶ 34. Generally, we review a court's decision on a motion *in limine* for an abuse

of discretion. *Schandelmeier-Bartels v. Chicago Park District*, 2015 IL App (1st) 133356,

¶ 25. However, where the only issue before the reviewing court involves a question of law,

the trial court's decision is reviewed *de novo*. *Id*.

¶ 45    Here, the relevant question is whether the trial court erred in finding that Terry could

not recover the emotional distress damages that he claimed in his third amended complaint.

If a trespass causes mental distress, the trespasser is liable in damages for the mental

distress and any resulting illness or physical harm. *Gavcus v. Potts*, 808 F.2d 596, 598 (7th

Cir. 1986). In Terry's complaint, he alleged that as a direct and proximate cause of Cheryl

trespassing into his home, reporting him to the sheriff's department, and the civil forfeiture

of his residence, he suffered emotional distress in that his sleep patterns were disturbed, he

---

[2]As noted above, the trial court granted partial summary judgment in favor of Cheryl, finding that there was no genuine issue of material fact as to whether Terry could recover these damages. The court also granted her motion *in limine*, barring evidence related to these damages.

18

consumed alcohol to excess, he was moody and irritable, he suffered from depression, he had anxiety episodes, and he had suicidal ideations. In his February 10, 2015, deposition, he testified that he had not been diagnosed by a physician with any ailment since the incident, he had not reported any symptoms of anxiety or depression to his physician since before the incident, and he had no medical or mental health treatment for any symptoms that he experienced since the incident.

¶ 46    Neither in his appellate briefs, nor in his pleadings filed below, has Terry identified the emotional distress damages that he suffered as a result of the trespass alone; the allegations asserted that he suffered emotional distress from the trespass, his criminal conviction, and the subsequent consequences of the conviction, such as the forfeiture of his house. Although he attempted to testify about his fear of future break-ins (the trial court did not allow this testimony because of the motion *in limine*), he made no offer of proof about this fear or any other emotional distress that he experienced as a result of the trespass. Thus, we cannot determine what emotional distress damages he is claiming specific to the trespass. Further, the court found that Terry was only allowed to recover nominal and punitive damages because his criminal actions were the cause of his other claimed damages, which included his emotional distress damages. Thus, the court essentially concluded that Terry's claimed emotional distress damages were not the result of the trespass alone. Because damages in tort cannot be uncertain or speculative (see *Chicago Title & Trust Co. v. Walsh*, 34 Ill. App. 3d 458, 471 (1975)), and there is no indication in the record that Terry suffered emotional distress damages solely as a result of the trespass,

we cannot say that the court erred in barring him from presenting evidence of his emotional distress damages.

¶ 47                                    B. Jury Instruction

¶ 48   Terry next contends that the trial court improperly instructed the jury that it should award him a trivial sum in compensatory damages for Cheryl's trespass.

¶ 49   A reviewing court generally reviews jury instructions for an abuse of discretion. *People v. Anderson*, 2012 IL App (1st) 103288, ¶ 33. The decision whether to give the instruction is within the sound discretion of the trial court, but there must be evidence in the record to justify giving a particular instruction. *Id*. However, when the question is whether the applicable law was accurately explained to the jury, the standard of review is *de novo*. *Id*. ¶ 34.

¶ 50   A plaintiff who has proved trespass need not prove actual damages to recover nominal damages; a trespass occurs whenever a property interest is invaded. *Chicago Title Land Trust Co. v. JS II, LLC*, 2012 IL App (1st) 063420, ¶ 77. Every trespass entitles plaintiff to at least nominal damages. *Johnson v. Tipton*, 103 Ill. App. 3d 291, 296-97 (1982).

¶ 51   In this case, the jury was instructed that:

> "If [Cheryl] trespassed onto plaintiff's property, plaintiff may be entitled to nominal damages from defendant. Nominal damages are designed as a trivial sum awarded as recognition that a legal injury was sustained though slight. Nominal damages will be awarded for an intentional tort to vindicate the plaintiff's claim where no recoverable loss to be established.

20

If you find that Cheryl Bovee intentionally trespassed on to Terry Bovee's property, then damages in favor of Terry Bovee are presumed to have occurred."[3]

Terry contends that there were two errors with these instructions: the trial court defined "nominal damages" as trivial, which prevented the jury from awarding him something greater than trivial; and the court did not instruct the jury that damages are to be presumed in a trespass action. First, the definition of "nominal damages" in the instruction was provided by Cheryl's counsel and was obtained from Barron's Law Dictionary. In determining whether the definition of "nominal damages" should be given to the jury, the court concluded that it was a legal term that needed to be defined for them. We find that the court's decision to provide the definition to the jury was not an abuse of discretion.

¶ 52 Black's Law Dictionary defines *nominal damages* as: "A trifling sum awarded when a legal injury is suffered but there is no substantial loss or injury to be compensated." Black's Law Dictionary (11th ed. 2019). Also, Black's cites Charles T. McCormick's *Handbook on the Law of Damages* § 20, at 85 (1935): "Nominal damages are damages awarded for the infraction of a legal right, where the extent of the loss is not shown, or where the right is one not dependent upon loss or damage." The definition of "nominal damages" given to the jury here is consistent with the definition from Black's Law Dictionary. Second, the trial court did instruct the jury that damages are to be presumed in a trespass action, which was a correct statement of law. Thus, the foregoing instructions were proper.

---

[3]This jury instruction was read to the jury after the nominal damages' instruction, but it is not located in the common law record after the nominal damages' instruction; instead, it is the last jury instruction there.

21

¶ 53                    C. Dismissal of the Intrusion Upon Seclusion Claim

¶ 54    Terry also argues that the trial court erred in granting summary judgment in favor

of Cheryl and Michael on his intrusion upon seclusion claim.

¶ 55    Summary judgment should be granted when the pleadings, depositions, admissions

on file, and affidavits, if any, establish there is no genuine issue of material fact and that

the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West

2014). When determining whether a genuine issue of material fact exists, the trial court

must construe all pleadings and attachments strictly against the movant and liberally in

favor of the nonmovant. *Hilgart v. 210 Mittel Drive Partnership*, 2012 IL App (2d)

110943, ¶ 19. We review *de novo* an order granting summary judgment. *Id.*

¶ 56    Our supreme court in *Lawlor v. North American Corp. of Illinois*, formally

recognized a cause of action in Illinois for the tort of intrusion upon seclusion. *Lawlor v.

North American Corp. of Illinois*, 2012 IL 112530, ¶ 35. To state a cause of action

for intrusion upon seclusion, a plaintiff must allege: (1) an unauthorized intrusion into

seclusion, (2) the intrusion would be highly offensive to a reasonable person, (3) the

matter intruded upon was private, and (4) the intrusion caused plaintiff's anguish and

suffering. *Cooney v. Chicago Public Schools*, 407 Ill. App. 3d 358, 366 (2010). The third

element of the tort, requiring allegations of private facts, is the predicate for the other

elements, and if this element is not proven, this court need not reach the other elements.

*Busse v. Motorola, Inc.*, 351 Ill. App. 3d 67, 72 (2004).

¶ 57    Our court provides guidance on what constitutes a "private fact" in *Davis v. Temple*,

284 Ill. App. 3d 983 (1996). There, plaintiff brought a claim against defendant police

officer for intrusion upon seclusion because, in his capacity as a police officer, he contacted plaintiff via telephone and went to her place of employment to question her about an incident he was investigating involving her husband. *Id*. at 987-88. Our court found that the officer's actions did not constitute an unreasonable intrusion into the seclusion of another because any alleged offensive conduct occurred during the course of a criminal investigation concerning plaintiff's husband. *Id*. at 994. The court concluded that a criminal investigation was a public matter, not a private matter, and did not meet the third element. *Id*. The facts that the officer called plaintiff and demanded that she appear at the police station and then appeared at her place of employment did not constitute an unreasonable intrusion into the seclusion of another, due to the public nature of the investigation of a crime allegedly committed. *Id*. at 995.

¶ 58    Here, in his complaint, Terry argued that both Cheryl's and Michael's intrusions into his home and his private affairs were highly offensive and were, thus, an intrusion upon seclusion. Although neither defendant was a law officer conducting an investigation like in *Davis*, Cheryl's discovery of Terry's criminal conduct of maintaining a marijuana growing operation in his basement is not merely a private matter. In making this decision, we find *Beresky v. Teschner*, 64 Ill. App. 3d 848 (1978), instructive (although it did not involve the same privacy tort at issue here). In *Beresky*, the appellate court found that there was no public disclosure of private facts when a publisher of a newspaper printed an article about plaintiffs' teenage son's death from a drug overdose and stated that he had been a major seller and user of heroin. *Id*. at 856. The court found that the subject of drug use was a matter of great controversy and of great public concern. *Id*. Similarly, we conclude that

Cheryl's discovery and subsequent reporting of Terry's illegal growing operation was not a private matter for the purposes of the tort of intrusion upon seclusion. Thus, we affirm the trial court's decision to grant partial summary judgment in favor of Cheryl and Michael on this issue. See *Bourgonje v. Machev*, 362 Ill. App. 3d 984, 994 (2005) (summary judgment is proper where plaintiff will be unable to prove an element of his cause of action).

¶ 59                                    D. Judicial Bias

¶ 60    Terry next contends that he was denied a fair trial because the trial court was biased against him. In support of this argument, he points to the following evidentiary rulings the court made against him: (1) the court permitted Whitney and Cheryl to testify about the incident at Terry's residence where he used the phrase "train wreck"; (2) his attorney was not permitted to use the word "vigilante" during *voir dire*; (3) during opening statements, his counsel was not permitted to tell the jury that Cheryl had no objections to marijuana because she had friends who smoked marijuana; (4) during opening statements, Cheryl's counsel was permitted to tell the jury that the court had determined that Terry was entitled to "zero" monetary damages; (5) Cheryl was permitted to testify about incidents that occurred during her marriage with Terry that demonstrated that he was a "dangerous and unstable person"; (6) the court put severe limitations on Terry's ability to rebut this testimony; (7) the court refused to allow Terry to present testimony about how he had been a victim of parental alienation; (8) the court refused to allow testimony from Detective Mike Ryan that Terry was not under investigation for his growing operation prior to Cheryl reporting him; and (9) the court did not allow Michael to testify about Cheryl's efforts to

conceal the trespass. Based on these evidentiary rulings, Terry claims that the court "put [its] finger on the scales of justice in favor of Cheryl."

¶ 61 A trial judge is presumed to be impartial, and the party asserting bias bears the burden of overcoming that presumption. *Eychaner v. Gross*, 202 Ill. 2d 228, 280 (2002). A judge's previous rulings alone almost never constitute a valid basis for a claim of judicial bias. *Id*. "Allegedly erroneous findings and rulings by the trial court are insufficient reasons to believe that the court has a personal bias for or against a litigant." *Id*. However, judicial remarks during the course of trial that reveal a high degree of favoritism or antagonism as to make fair judgment impossible supports a bias or partiality challenge. *Id*. at 281. The party claiming judicial bias must present evidence of prejudicial trial conduct and evidence of the judge's personal bias. *Id*. at 280.

¶ 62 Here, Terry has failed to meet his burden of showing that the trial judge was not impartial. Although the trial judge ruled adversely to him on a number of evidentiary issues, Terry has not shown that these evidentiary rulings reveal a "high degree of favoritism or antagonism as to make a fair judgment impossible." Even if Terry's allegations that the evidentiary rulings were erroneous is true, the mere fact that the evidentiary rulings were incorrect, alone, would be insufficient to demonstrate bias or prejudice warranting a new trial. As previously noted, adverse rulings alone rarely demonstrate a bias or prejudice on the part of the ruling judge.

¶ 63 Moreover, as to the specific evidentiary rulings that Terry challenges, we find no abuse of discretion. The determination of the admissibility of evidence rests primarily in

the discretion of the trial court, and its decisions will be reversed only upon a clear abuse of that discretion. *Johnson v. Tipton*, 103 Ill. App. 3d 291, 297 (1982).

¶ 64    Concerning the first evidentiary ruling that Terry challenges, permitting Whitney and Cheryl to testify about Whitney's encounter with Terry at his residence, Terry filed a motion *in limine* objecting to this line of testimony as irrelevant; he argued that trespassing onto his property was not a remedy for Cheryl feeling threatened by him. On July 17, 2019, the trial court granted Terry's motion *in limine* in part but reserved its ruling on whether Whitney could testify. The court found that this issue was better served to be ruled upon at trial because Whitney would only testify if certain facts were presented at trial by Terry, and it was not yet known if her testimony was relevant or necessary. In opening statements, Cheryl's counsel stated that Cheryl and Whitney's testimony about that encounter showed her motive for the trespass (he contended that she trespassed onto Terry's property because she felt threatened by Terry's comments). Counsel indicated that this was relevant to the punitive damages issue. At trial, Terry's counsel elicited testimony from Cheryl about Whitney's encounter with Terry at his residence. Whitney also testified about this incident, and the only objection made by Terry's counsel to this line of questioning was lack of foundation. In response to the objection, the court initially instructed Cheryl's counsel to lay the foundation and then subsequently instructed counsel to ask when the incident occurred, which counsel did. We find that the court did not abuse its discretion in permitting Cheryl and Whitney to testify about this encounter to establish the reasoning behind her decision to trespass, which would be relevant to the punitive damages issue.

26

¶ 65    The next adverse evidentiary ruling, not allowing Terry's counsel to use the word "vigilante" during *voir dire*, was also not an abuse of discretion. The trial court prohibited Terry's counsel from using the word "vigilante" as it was prejudicial due to its connotation. The court allowed counsel to question the potential jurors about the circumstances of the case, their thoughts about it, and what they might do under the same circumstances but thought it prejudicial to use the word "vigilante" because there was no point in using such an inflammatory word. We find that this ruling was not an abuse of the court's discretion.

¶ 66    The third evidentiary ruling, not allowing Terry's counsel to tell the jury that Cheryl had no objections to marijuana, was also not an abuse of the trial court's discretion. The court found that Cheryl's feelings about marijuana use were irrelevant; Terry's marijuana growing operation was illegal, and Cheryl was reporting a crime. We find that the court did not abuse its discretion by refusing to allow this line of questioning as any feelings that she had about marijuana use were irrelevant.

¶ 67    The fourth evidentiary ruling, allowing Cheryl's counsel to tell the jury that the trial court had determined that Terry was entitled to "zero" monetary damages, was also not an abuse of discretion. In opening statements, Cheryl's counsel stated that the relevant question was the amount of damages that Terry suffered when Cheryl entered his residence and that the answer to that question was that she did "zero" damage. Terry's counsel objected to that statement on the basis that Cheryl's counsel was representing that the court made a finding that compensatory damages were "zero." In response, Cheryl's counsel clarified that he said that the court made a finding that there were no damages arising out of Cheryl's unlawful entry into Terry's home. As it was apparent that there was no damage

27

to the property arising out of Cheryl's trespass, we find that the court's decision to overrule this objection was not an abuse of discretion.

¶ 68    As for the fifth and sixth evidentiary rulings, permitting Cheryl to testify about past incidents that occurred during her marriage with Terry and limiting rebuttal, the trial court did not abuse its discretion. During Cheryl's testimony, the court allowed her to testify about incidents that occurred during the marriage and threats and negative comments that Terry made after their divorce. The court found that this testimony was relevant to substantiate Cheryl's claim that she had a reasonable fear of Terry. The court also limited the testimony to relevant time periods, and when time periods were unclear, instructed counsel to clarify when each incident occurred. Terry was allowed to rebut the allegations about the abuse and/or threats by testifying about his perspective of his marriage to Cheryl, including the fact that he believed they had an amicable marriage; the specific incidents involving the children; his interactions with their children; that he did not make any derogatory statements about Cheryl after she filed for divorce; and that he never made negative statements to their mutual friends about Cheryl so that it would be relayed to her. Although he was not allowed to present testimony from a third party about an incident that occurred with his neighbors, the court permitted him to testify about the incident to present his side of the story because Cheryl had testified about it first. After a careful review of the record, we find that the court did not abuse its discretion in permitting this testimony and by not allowing third parties to testify about the specific incidents.

¶ 69    The seventh evidentiary ruling, refusing to allow Terry to present expert testimony about how he had been a victim of parental alienation, was also not an abuse of discretion.

The trial court also did not allow Terry's counsel to elicit testimony about how Cheryl talked badly about Terry to the children. The court found that this was not relevant to the issues of whether Cheryl had trespassed and, if so, the damages that should be awarded to Terry as a result of the trespass. We find that this ruling was not an abuse of discretion.

¶ 70    The eighth evidentiary ruling, refusing to allow testimony from Detective Mike Ryan that Terry was not under investigation for his growing operation, was also not an abuse of discretion. The issue of whether Terry was under investigation for his illegal growing operation at the time of Cheryl's trespass was irrelevant to the issues of whether Cheryl had trespassed and the amount, if any, of damages that should be awarded to Terry.

¶ 71    The last evidentiary ruling, refusing to allow Michael to testify about Cheryl's efforts to conceal the trespass, was not an abuse of discretion. During trial, Terry's counsel attempted to question Michael about his conversations with Cheryl regarding the trespass and her reporting Terry for his illegal activity. Terry's counsel noted that, if Michael had been permitted to testify about this matter, he would have stated that Cheryl thought she could report Terry anonymously, but he believed it would be a problem; he told her that he did not think she could do it anonymously, so he said that she should not do it at all. The trial court found that this line of questioning was irrelevant because Cheryl did in fact call law enforcement and report Terry's conduct. This ruling was not an abuse of the court's discretion.

¶ 72    Accordingly, we find that the trial court's evidentiary rulings did not reveal a high degree of favoritism toward Cheryl or antagonism toward Terry. We also find that the court

29

did not abuse its discretion in making those rulings. Thus, we conclude that Terry has failed to meet his burden of showing that the trial judge was not impartial.

¶ 73                           E. Dismissal of Michael

¶ 74    Lastly, Terry contends that the trial court erred in dismissing Michael from the cause of action. Pointing to the following facts, he argues that there was sufficient evidence of a civil conspiracy between Cheryl and Michael: Michael initially testified in his discovery deposition that Cheryl discovered the photographs in the mailbox; he was in the room when Cheryl reported Terry's growing operation to the sheriff's department; the door to the room in the basement where the growing operation was located was locked, and the key that Cheryl had would not work on that door; Terry had a photograph that showed the door to that room had been taken off its hinges; and Cheryl said she was inside the home for 15 minutes, but she could not have entered the house, searched the house, and took the locked door off its hinges by herself within that amount of time. Thus, Terry argues that Cheryl must have had an accomplice and that accomplice had to be Michael.

¶ 75    In his December 12, 2013, motion for summary judgment, Michael contended that the facts were undisputed that he had no involvement in Cheryl entering Terry's residence and taking photographs of Terry's marijuana growing operation and that it was apparent from the discovery that was conducted that he did not conspire with anyone to unlawfully enter Terry's residence. Attached to his motion was his discovery deposition, at which he testified that he was not present in Terry's home during the incident in question, and although he was present when Cheryl contacted the Jackson County Sheriff's Department, he had advised her against making the call. Cheryl's testimony at her discovery deposition

30

corroborated Michael's testimony that he was not involved; she testified that she had not told anyone about her intentions to enter Terry's residence that night, including Michael, and that he did not assist or aid her in entering Terry's home that night. Moreover, at Terry's discovery deposition, when asked what evidence he had of Michael's participation in the trespass, Terry answered that Michael was heard in the background of the audiotape of Cheryl's phone call to the sheriff's department and that it would "seem extremely unlikely that he did not participate in the trespass." He then acknowledged that they did not really know who assisted Cheryl and that Michael was a "suspect."

¶ 76 After carefully reviewing the record, we find that the trial court did not err in finding that there was no genuine issue of material fact regarding Michael's participation in the trespass. Thus, we affirm the court's order granting summary judgment in favor of Michael.

¶ 77                          III. CONCLUSION

¶ 78 For the foregoing reasons, we affirm the judgment of the circuit court of Jackson County.

¶ 79 Affirmed.